## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ANDRA HAMBY,           )
                               )
       Plaintiff,         )
                               )
v.                        )     Case No.:  2:18-cv-01216-SGC
                               )
CITY OF BIRMINGHAM,    )
                               )
       Defendant.     )

## MEMORANDUM OPINION[1]

The plaintiff, Andra Hamby, commenced this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, naming the City of Birmingham as the defendant.  The undersigned has twice granted Hamby's request to amend his complaint.  (Docs. 10, 26).  Before the undersigned is the defendant's motion to dismiss Hamby's second amended complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the *Federal Rules of Civil Procedure*.  (Doc. 29).  For the reasons discussed below, the motion is due to be granted, and this action is due to be dismissed with prejudice.

## I. Allegations of Complaint

Hamby is African American.  (Doc. 27 at ¶ 15).  He is employed by the defendant as a police officer.  (*Id.* at ¶ 17).  He filed a charge of discrimination

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 11).

against the defendant with the Equal Employment Opportunity Commission (the "EEOC") on April 26, 2016 (the "first EEOC charge"). (*Id.* at ¶ 18). Hamby and the defendant resolved the first EEOC charge, and the defendant was required to post a copy of a conciliation agreement on all bulletin boards in employee areas for two years beginning on September 8, 2017. (*Id.* at ¶¶ 18-19).

On February 4, 2017, Hamby was assigned to guard a prisoner at the UAB Hospital Emergency Department. (*Id.* at ¶ 20). At the prisoner's request, Hamby escorted the prisoner to the bathroom in the lobby. (*Id.* at ¶ 21). While Hamby stood guard outside the bathroom door, the prisoner attempted to escape through the bathroom ceiling and fell through the ceiling of an adjacent room. (*Id.* at ¶¶ 22-23). Hamby reported the incident to his supervisor, Sergeant Frank Alexander, III, who is Caucasian. (*Id.* at ¶ 24). Following an investigation into the incident, Hamby received a one-day suspension from Chief A.C. Roper, who is African American. (*Id.* at ¶¶ 25-26). Hamby alleges Officer Mason Grimes and Officer McNeal, both Caucasian, are similarly situated to him and were not disciplined for similar incidents. (*Id.* at ¶ 27). Based on this incident, Hamby filed a charge of discrimination and retaliation against the defendant with the EEOC on May 4, 2017 (the "second EEOC charge"). (*Id.* at ¶ 29; Doc. 1 at p. 32).[2]

---

[2] The EEOC dismissed the charge and issued a notice of suit rights to Hamby on May 1, 2018. (Doc. 1 at 37).

On April 17, 2018, Sergeant Ryan Emery, who is African American, gave instructions to Hamby and other officers during roll call regarding proper narrative writing for reports. (Doc. 27 at ¶ 30). After Hamby asked why such emphasis was being placed on narrative writing, Sergeant Cleveland, who is Caucasian, told Sergeant Emery in a loud, angry manner to finish the instructions. (*Id.* at ¶¶ 32-33). When Hamby told Sergeant Cleveland that his question was not meant to be disrespectful, Sergeant Cleveland became more aggressive, stood up, pounded his fist on the table, acted as if he was instigating a fight with Hamby, and called for roll to be completed in a loud, angry, intimidating voice. (Id. at ¶¶ 34-35). Hamby was intimidated. (*Id.* at ¶ 36). Based on this incident, Hamby filed a charge of hostile work environment discrimination and retaliation against the defendant with the EEOC on April 20, 2018 (the "third EEOC charge"). (*Id.* at ¶ 43; Doc. 1 at p. 34).[3]

Also based on the incident, Sergeant Onree Pruitt, who is African American, wrote up Hamby for "publicly criticizing orders given by the Chief of Police, a Superior Officer, or a public official." (Doc. 27. at ¶ 38). Hamby received a one-day suspension for the April 17, 2018 incident. (*Id.* at ¶ 45). Hamby asserts that on information and belief no other similarly situated officer has been disciplined for asking a question or making a comment during roll call. (*Id.* at ¶ 39).

---

[3] The EEOC dismissed the charge and issued a notice of suit rights to Hamby on May 1, 2018. (Doc. 1 at 36).

Sergeant Pruitt wrote up Hamby again on April 20, 2018, for "disobedience of, or neglect or refusal to comply with, written or oral rules or orders." (*Id.* at ¶ 40). The basis for this disciplinary action was an incident where Hamby left work early because he was not feeling well. (*Id.*). Sergeant Emery had given Hamby permission to leave early, but according to Sergeant Pruitt, Hamby failed to inform Sergeant Emery that Captain Sean Edwards had ordered him to "go to work." (*Id.*). Hamby received a three-day suspension for the April 20, 2018 incident. (*Id.* at ¶ 45). Hamby asserts that on information and belief no other similarly situated officer has been disciplined for requesting to leave early or obtaining permission from a superior officer to leave early. (*Id.* at ¶ 41).

Hamby was sent back to work at the West Precinct on July 10, 2018, over his objection and his reports that working in a hostile environment was making him sick.[4] (*Id.* at ¶ 53). Also on July 10, 2018, Hamby was written up for allegedly attempting to meet with Chief Patrick Smith without approval and for calling in sick instead of reporting for duty after being counseled by Deputy Chief Michael Richards, who is Caucasian. (*Id.* at ¶ 54). Officer Johnny Brooks, a Caucasian male, met with Hamby off duty on January 28, 2019, to notify him of the hearing date for the July 10, 2018 write up. (*Id.* at ¶ 55). During the meeting, Officer Brooks harassed Hamby by poking him in the chest and yelling at him. (*Id.* at ¶ 56). Based

---

[4] It is not clear from where Hamby returned to the West Precinct.

on the January 28, 2019 incident, Hamby obtained a harassment warrant for Officer Brooks. (*Id.* at ¶ 61). Also based on the January 28, 2019 incident, Hamby was written up for being loud and boisterous, failing to lower his voice after being asked several times, and disrespecting a superior officer. (*Id.* at ¶ 62). Hamby received a three-day suspension for the July 10, 2018 incident and was ordered to receive additional training, and he received a two-day suspension for the January 28, 2019 incident. (*Id.* at ¶¶ 59, 63-64).

Hamby was notified by Sergeant Emery on May 8, 2019, that on May 11, 2019, he would be transferred to the South Precinct under Captain Ronald Sellers, who is Caucasian, with no choice regarding his shift or days off. (*Id.* at ¶ 66). Hamby was told that going forward he would have Sunday, Monday, and Tuesday off instead of Saturday, Sunday, and Monday. (*Id.* at ¶ 67). When Officer Angela Barry, who is African American and similarly situated to Hamby, was transferred to a different precinct, she was given the opportunity to choose her shift and days off. (*Id.* at ¶ 69).

On May 9, 2019, Hamby requested accommodation for plans that had been made around his current work schedule – namely, visitation with his son set by court order. (*Id.* at ¶ 68). Captain Sellers denied Hamby's request without explanation. (*Id.* at ¶ 73). On May 10, 2019, Hamby spoke with Lieutenant Roberta Payne, who is African American, and requested to be off on May 11, 2019, due to plans made

prior to receiving notice of his transfer.  (*Id.* at ¶ 70).  Later that day, Lieutenant Payne informed Hamby that Captain Sellers had approved his request but wanted documentation proving where he would be on May 11, 2019.  (*Id.* at ¶ 71).  Hamby asserts that on information and belief no similarly situated officer has had to submit proof of his or her whereabouts when requesting a day off.  (*Id.* at ¶ 72).

Hamby alleges he is continually subjected to public humiliation and ridicule by his superiors.  (*Id.* at ¶ 48).  For example, Hamby's fellow officers make comments about sergeants taking a class to learn how to deal with officers like him, denominated the "Officer Hamby Class," and sergeants have told Hamby's fellow officers they do not expect much from him.  (*Id.* at ¶ 47).  As another example, Hamby cites an incident where Sergeant Charlie Newfield, who is Caucasian, told him via radio to release a person he was in the process of arresting on an outstanding warrant because the shift was busy.  (*Id.* at ¶ 49).  According to Hamby, no similarly situated officer has been humiliated or treated in this disrespectful manner on a traffic stop and in front of a suspect.  (*Id.* at ¶ 50).  Hamby also alleges Sergeant Newfield has on occasion tracked his patrol car using the computer inside the vehicle, and that on information and belief no similarly situated officer has had his or her patrol car tracked by a superior officer without just cause.  (*Id.* at ¶¶ 51-52).

Based on various combinations of the foregoing allegations, Hamby asserts claims for race discrimination and retaliation. (*Id.* at ¶¶ 76-224).[5] He brings each of these claims under Title VII and § 1981. The defendant argues Hamby has failed to exhaust his administrative remedies with respect to "all facts plead[ed] occurring after April 20, 2018," the date on which Hamby filed his third EEOC charge, warranting dismissal under Rule 12(b)(1). (Doc. 29 at pp. 3-4). The defendant also argues Hamby has failed to state a plausible claim of discrimination or retaliation, warranting dismissal under Rule 12(b)(6). (*Id.* at pp. 5-11).

## II. Standard of Review

Rule 12(b)(6) must be considered against the backdrop of Rule 8(a)(2) of the *Federal Rules of Civil Procedure*. Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting

---

[5] Hamby pleads all of the allegations in the facts section of his second amended complaint and re-pleads certain of the allegations under each discrete count. Although Hamby has circumscribed the allegations on which each count relies, the undersigned finds it more efficient to consider all of the allegations in analyzing each count.

*Twombly*, 550 U.S. at 555).  "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient.  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

To survive a motion to dismiss for failure to state a claim on which relief may be granted brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).

## III. Discussion

### A. Exhaustion of Administrative Remedies

Title VII prohibits race-based employment discrimination, as well as retaliation for opposing or participating in an investigation of race-based employment discrimination.  42 U.S.C. §§ 2000e-2(a)(1) (Title VII discrimination provision), 2000e-3(a) (Title VII retaliation provision).  The general rule is that a plaintiff must file a charge of discrimination with the EEOC before asserting a Title

VII claim in court. *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Id.* (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). Where dismissal for failure to exhaust administrative remedies is appropriate, Rule 12(b)(6) provides the basis for dismissal, not Rule 12(b)(1), because exhaustion is not a jurisdictional prerequisite. *Lewis v. Asplundh Tree Expert Co.*, 305 F. App'x 623, 627 (11th Cir. 2008) (citing *Jackson v. Seaboard C.L.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982)).

Strict compliance with the general rule is not required where a plaintiff raises claims for the first time in a judicial action that are "like or related to," or that "can reasonably be expected to [have] grow[n] out of," the claims asserted in an EEOC charge. *Id.* at 1280 (internal quotation marks omitted) (citing *Alexander v. Fulton Cty., Georgia*, 207 F.3d 1303, 1332 (11th Cir. 2000), and *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). However, "[a]llegations of new acts of discrimination . . . are not appropriate." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989).

Like Title VII, § 1981 protects against race-based employment discrimination and retaliation for opposing or participating in an investigation of race-based

employment discrimination. *Milton v. Milligan*, 2013 WL 8288591, at *1 (N.D. Fla. Mar. 5, 2013) (noting § 1981 explicitly prohibits race-based employment discrimination and implicitly prohibits retaliation for asserting rights under the statute). Moreover, the elements of race-based employment discrimination and retaliation claims brought under Title VII and § 1981 are the same. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (addressing disparate treatment claims involving tangible employment actions); *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (addressing hostile work environment claims); *Barnett v. Athens Reg'l Med. Ctr., Inc.*, 550 F. App'x 711, 713-14 (11th Cir. 2013) (addressing retaliation claims). Accordingly, the Eleventh Circuit "has routinely and systematically grouped Title VII and § 1981 claims for analytic purposes." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010); *see also Standard*, 161 F.3d at 1330-33 (analyzing race discrimination claims brought under Title VII and § 1981 together); *Barnett*, 550 F. App'x at 714-15 (analyzing retaliation claims brought under Title VII and § 1981 together); *Melton v. Nat'l Dairy LLC*, 705 F. Supp. 2d 1303, 1315 (M.D. Ala. 2010) (using Title VII cases and § 1981 cases interchangeably). However, unlike claims brought under Title VII, claims brought under § 1981 are not subject to administrative exhaustion requirements. *Mathis v. Leggett & Platt*, 263 F. App'x 9, 12 (11th Cir. 2008); *Caetio v. Spirit Coach, LLC*,

992 F. Supp. 2d 1199, 1209 (N.D. Ala. 2014) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975)).

The undersigned declines to address the defendant's exhaustion argument. Even if meritorious, the argument would apply only to the plaintiff's claims of discrimination and retaliation brought pursuant to Title VII. It still would be necessary to consider whether the plaintiff has stated plausible discrimination and retaliation claims under § 1981, and the analysis for those claims is the same as for discrimination and retaliation claims brought under Title VII. Because that analysis yields the conclusion the plaintiff has failed to allege sufficient facts to state a plausible discrimination or retaliation claim under § 1981 – or, therefore, under Title VII – it is more efficient to forego consideration of the defendant's exhaustion argument.

## B. Failure to State a Plausible Claim

### 1. Disparate Treatment Claims

There are two theories of intentional discrimination under Title VII: disparate treatment discrimination and pattern or practice discrimination. *Burke-Fowler v. Orange Cty., Florida*, 447 F.3d 1319, 1322 (11th Cir. 2006). A third theory of discrimination under Title VII prohibits neutral employment practices that, although non-discriminatory on their face, have an adverse, disproportionate impact on a statutorily protected-group. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263,

1273-74 (11th Cir. 2000). The undersigned construes the complaint as alleging disparate treatment discrimination.[6]

Disparate treatment discrimination claims come in two types: (1) those involving tangible employment actions, such as discipline or termination, and (2) those based on a hostile work environment that alters the terms and conditions of employment, even though the employee does not suffer a tangible employment action. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010). Count III of the complaint clearly asserts a hostile work environment claim, and the undersigned construes Count I as asserting a disparate treatment claim involving tangible employment actions.

### a. Involving Tangible Employment Actions

Where, as here, a plaintiff attempts to establish a disparate treatment claim involving tangible employment actions with circumstantial evidence of discrimination, a court typically uses the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate the claim. *Burke-Fowler*, 447 F.3d at 1323; *see also Smith v. Lockheed-*

---

[6] The Eleventh Circuit has indicated claims of pattern or practice discrimination are generally brought either by the EEOC or a class of private plaintiffs. *See Joe's Stone Crab*, 220 F.3d at 1286. Therefore, to the extent Hamby asserts a pattern and practice discrimination claim, it fails because the EEOC has not joined this action and Hamby is not proceeding on behalf of a class of plaintiffs. *See Skelton v. Birmingham Airport Auth.*, 2018 WL 6523172, at *2 n.1 (N.D. Ala. Dec. 12, 2018) (dismissing pattern and practice discrimination claim asserted by individual plaintiff); *Banks v. Ackerman Sec. Sys., Inc.*, 2009 WL 974242, at *3 (N.D. Ga. Apr. 10, 2009) (same).

*Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (holding *McDonnell Douglas* framework is not *sine qua none* for plaintiff to survive summary judgment but, rather, triable issue of fact exists if plaintiff presents convincing mosaic of circumstantial evidence that allows inference of intentional discrimination).[7] Under this framework, a plaintiff establishes a prima facie case by showing (1) he belongs to a protected class, (2) he was subjected to an adverse employment action, (3) his employer treated similarly situated employees outside his class more favorably, and (4) he was qualified to do the job. *Burke-Fowler*, 447 F.3d at 1323.[8]

At the pleading stage, a plaintiff asserting a disparate treatment claim involving tangible employment actions is not required to allege facts sufficient to make out a *prima facie* case under the *McDonnell Douglas* framework. *Davis v. Coca-Cola Bottling Co. Consol*, 516 F.3d 955, 974 (11th Cir. 2008) (citing

---

[7] A plaintiff may also establish a disparate treatment claim with direct evidence of discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* at 1086 (internal quotation marks omitted). Hamby alleges no statement or conduct that constitutes direct evidence of race-based discrimination. *Compare Dixon v. Hallmark Cos., Inc.*, 627 F.3d 849, 855 (11th Cir. 2010) (noting Eleventh Circuit has held documents stating " 'Fire Early – he is too old'" and " ' Fire Rollins – she is too old'" constitute direct evidence of discrimination), *with Tomczyk v. Jocks & Jills Rests., LLC*, 198 F. App'x 804, 810 (11th Cir. 2006) (holding use of racially derogatory comments not directly linked to decision to terminate plaintiff served as circumstantial evidence of discrimination at best).

[8] The burden then shifts to the defendant to show a legitimate, non-discriminatory reason for its employment action. *Burke-Fowler*, 447 F.3d at 1323. If the defendant makes this showing, the burden shifts back to the plaintiff to prove the reason is pretext for unlawful discrimination. *Id.*

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).[9]  Nonetheless, he must satisfy the pleading standard articulated by *Twombly* and *Iqbal*, which requires that he allege enough facts, accepted as true, to suggest intentional race discrimination. *Id.*

With respect to most of the tangible adverse employment actions catalogued in the second amended complaint, Hamby merely alleges no similarly situated officer has been subjected to the same treatment.  (Doc. 27 at ¶¶ 39, 41, 50, 52, 72). These allegations are formulaic recitations of an element of a *McDonnell Douglas prima facie* case, or at least a portion of an element (i.e., Hamby does not allege these officers are outside his protected class).  They are unaccompanied by factual allegations indicating how the comparator officers are similarly situated to Hamby or outside Hamby's protected class, or otherwise suggesting Hamby's treatment was the result of intentional race discrimination.  *See Davis*, 516 F.3d at 974 (holding allegation plaintiffs were denied promotions and treated differently than similarly situated white employees solely because of race "epitomize[d] speculation" and, thus, failed to satisfy pleading requirements); *Uppal v. Hosp. Corp. of America*, 2011 WL 2631869, at *3 (M.D. Fla. July 5, 2011) ("District courts frequently dismiss discrimination claims when the allegations of disparate treatment are nothing more

---

[9] *Davis* was abrogated on other grounds by *Twombly* and *Iqbal*.  *See LaCroix v. Western Dist. Of Kentucky*, 627 F. App'x 816, 818 (11th Cir. Sept. 28, 2015) (recognizing abrogation).

than legal conclusions unsupported by any facts."), *aff'd*, 482 F. App'x 394 (11th Cir. 2012).

With respect to his transfer with no choice regarding his shift or days off, Hamby goes further than alleging insufficient facts to support a plausible claim of racially disparate treatment. By identifying another African American officer as the employee who received more favorable treatment (Doc. 27 at ¶ 69), he makes an affirmative allegation that does not support the claim. *See Hammons v. George C. Wallace State Cmty. Coll.*, 174 F. App'x 459, 463-64 (11th Cir. 2006) (holding plaintiff failed to establish prima facie case of racially disparate treatment because she was replaced by someone within her protected class); *Jordan v. City of Gary, Indiana*, 396 F.3d 825, 833 (7th Cir. 2005) ("[B]ecause [the comparator] is a member of the same protected class as [the plaintiff], [the plaintiff] is precluded from successfully arguing that she was unfairly discriminated against . . . ."); *Floyd v. U.S. Dep't of Homeland Sec.*, 2009 WL 3614830, at *8 (D. Md. Oct. 27, 2009) ("A plaintiff cannot establish a claim of disparate treatment by referencing a comparator of the same protected class.").

With respect to the one-day suspension he received after a prisoner he was guarding attempted to escape through the ceiling of a bathroom at UAB Hospital, Hamby offers Officers Grimes and McNeal as comparators. (Doc. 27 at ¶ 27). Insofar as Hamby identifies these officers and pleads a fact to support the allegation

they are outside his protected class (i.e., that the officers are Caucasian), this component of his disparate treatment claim is minimally more developed than the ones discussed above. However, the one-day suspension Hamby alleges he received, absent factual enhancement, is not an adverse employment action that will support a disparate treatment claim.

In the disparate treatment context, an adverse employment action is one that results in "a serious and material change in the terms, conditions, or privileges of employment," as viewed from the perspective of a reasonable person. *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1239-40 (11th Cir. 2001), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Applying this standard, the Eleventh Circuit has held a one-day suspension resulting in the plaintiff's loss of less than $100.00 of compensation is not an adverse employment action that will support a disparate treatment claim. *Embry v. Callahan Eye Found. Hosp.*, 147 F. App'x 819, 829 (11th Cir. 2005); *see also Albu v. TBI Airport Mgmt.*, 2016 WL 11467718, at *4 (N.D. Ga. Sept. 26, 2016) (finding one-day suspension was not adverse employment action that would support disparate treatment claim absent allegation of additional facts), *report and recommendation adopted*, 2016 WL 6246732 (N.D. Ga. Oct. 26, 2016). Absent an allegation the one-day suspension had some serious and material effect on Hamby's employment, the suspension cannot form the basis of an actionable disparate treatment claim.

## b. Based on Hostile Work Environment

A hostile work environment is one " 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A plaintiff establishes a hostile work environment claim by showing (1) he belongs to a protected group, (2) he has been subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, such as race, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment, and (5) his employer is responsible for such environment under a theory of direct or vicarious liability. *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014). Whether conduct is sufficiently severe or pervasive involves both a subjective and objective inquiry. *Id.* at 1249. Relevant to the objective component are the following factors: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance. *Id.* at 1250-51.

Assuming for the sake of argument Hamby alleges objectively severe and pervasive harassment, he fails to assert facts that support the inference the harassment was based on his race. To the extent Hamby's hostile work environment claim is based on the same conduct underlying his disparate treatment claim, it fails to cross the threshold of plausibility for the same reasons. As discussed above, the complaint does not include factual allegations that support the existence of a non-African American officer similarly situated to Hamby who received more favorable treatment from the defendant or otherwise show Hamby's treatment was the result of intentional race discrimination. *See Uppal*, 482 F. App'x at 396-97 (holding plaintiff's failure to allege facts suggesting gender, race, or national origin played any part in tangible adverse employment actions necessarily defeated any allegation hostile work environment created by those actions was attributable to protected characteristics).

While the discussion above did entertain the possibility Hamby alleges facts sufficient to suggest the one-day suspension he received for the attempted prisoner escape was racially discriminatory, this incident alone does not support a plausible hostile work environment claim. A single incident of harassment that does not involve physically threatening conduct and is unaccompanied by factual allegations the harassment interfered with an employee's ability to perform his job is not so objectively severe or pervasive as to be actionable. *See Davis v. Auburn Bank*, 2016

WL 1605349, at *12 (M.D. Ala. Mar. 30, 2016) (finding plaintiff's allegations she, unlike Caucasian co-workers, was reprimanded for certain behavior and required to comply with work rules insufficient to show objectively severe or pervasive harassment), *report and recommendation adopted*, 2016 WL 1560404 (M.D. Ala. Apr. 18, 2016), *aff'd*, 704 F. App'x 837 (11th Cir. 2017); *Uppal*, 482 F. App'x at 397 (holding single incident of harassing conduct could not support hostile work environment claim).[10]

Finally, the undersigned notes the complaint is devoid of allegations suggesting Hamby was subjected to offensive race-based remarks or overtly race-based conduct. In the end, Hamby has done no more than invoke race in the course of narrating a claim consistent with workplace difficulties not based on race, which fails to raise his right to relief above the speculative level. *See Uppal*, 2011 WL 2631869, at *4 ("[G]eneric factual allegations show[ing] workplace difficulties entirely consistent with . . . personality disputes [not based on a protected characteristic] . . . are not actionable under Title VII.").

### 2. Retaliation Claims

Absent direct evidence, courts also use the *McDonnell Douglas* burden-shifting framework to analyze retaliation claims. *Brown v. Ala. Dep't of Transp.*,

---

[10] Although Hamby generally alleges the purported harassment affected his physical and mental health (Doc. 27 at ¶¶ 74-75), he does not allege facts that would indicate the effects carried over into his job performance.

597 F.3d 1160, 1181 (11th Cir. 2010). Under this framework, a plaintiff establishes a *prima facie* case of retaliation by showing (1) he engaged in a protected activity, such as reporting harassment or other discrimination based on a protected characteristic, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). As with a disparate treatment claim, a plaintiff need not allege facts at the pleading stage sufficient to make out a *prima facie* case of retaliation under the *McDonnell Douglas* framework, but he must allege enough facts to suggest discriminatory retaliation. *Marshall v. Mayor & Alderman of City of Savannah, Georgia*, 366 F. App'x 91, 100 (11th Cir. 2010) (citing *Davis*, 516 F.3d at 974).

Hamby alleges three protected activities: (1) the first EEOC charge he filed on April 26, 2016, (2) the second EEOC charge he filed on May 4, 2017, and (3) the third EEOC charge he filed on April 20, 2018.

To demonstrate a causal connection between any of these activities and any subsequent adverse employment actions, Hamby would be required to show decision-makers were aware of the activities and that the activities and the subsequent adverse employment actions were not "wholly unrelated." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted). "Close temporal proximity" may be sufficient to show a protected

activity and an adverse employment action were not "wholly unrelated." *Gupta*, 212 F.3d at 590 (internal quotation marks omitted). However, temporal proximity, without more, must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (internal quotation marks omitted). When three or more months elapse between a protected activity and an adverse employment action, the temporal proximity of the events is not "very close." *Id.*

Hamby fails to allege facts giving rise to a plausible inference there is a causal connection between any of the EEOC charges he filed and any subsequent adverse employment action he suffered. He does not allege any of the persons responsible for disciplining, humiliating, or taking any other action against him that he considered adverse was aware of his EEOC charges. Moreover, most of the adverse actions Hamby claims to have suffered after filing each of the charges were taken well beyond the three months the Eleventh Circuit has found to be outside the bounds of "very close" temporal proximity. Therefore, the second amended complaint lacks allegations of a temporal-based causal connection, nor does it include factual allegations that would permit the inference of some other type of causal connection.

Hamby appears to offer the conciliation agreement, which the defendant was required to post publicly for two years beginning on September 8, 2017, as another protected activity in which he engaged. However, the conciliation agreement could not be causally connected to Hamby's one-day suspension for the attempted prisoner

escape because the incident, investigation, hearing, and suspension all occurred before the conciliation agreement was posted. Moreover, the other discipline, humiliation, and mistreatment Hamby alleges he suffered occurred more than three months after the conciliation agreement was posted, and Hamby fails to allege facts that would permit the inference of some other type of causal connection.

Although Hamby appears to allege he complained of race discrimination separate and apart from the EEOC charges he filed, he alleges no facts regarding any such additional complaints. Absent factual enhancement, Hamby's allegation he complained of race discrimination is too vague to support his retaliation claim.

Because the second amended complaint lacks factual allegations – temporal or otherwise – suggesting a causal relationship between protected activity in which the plaintiff engaged and any adverse employment action he suffered, or otherwise suggesting discriminatory retaliation, the complaint fails to state a plausible retaliation claim. *See Thompson*, 990 F. Supp. 2d at 1342-43 (holding plaintiff failed to state retaliation claim where more than three months elapsed between protected activity and adverse employment actions and plaintiff alleged no other causal link); *Uppal*, 482 F. App'x at 397 (holding plaintiff failed to state retaliation claim where she did not allege decision-makers responsible for adverse employment actions were aware of protected activity or allege any other causal connection between protected activity and adverse employment actions); *Thomas*, 506 F.3d at 1364 (holding

plaintiff failed to present evidence from which reasonable jury could find causal connection between protected activity and adverse employment action that occurred three months later).

## IV. Conclusion

For the foregoing reasons, the defendant's motion to dismiss (Doc. 29) is due to be granted, and this action is due to be dismissed with prejudice.[11] A separate order will be entered.

**DONE** this 26th day of November, 2019.

Staci G. Cornelius
_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[11] Hamby has not requested leave to further amend his complaint. *See Daewoo v. Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").